# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN T. SULLIVAN, | |
| Plaintiff-Appellant, | |
| | No. 14 C 0329 |
| v. | Judge James B. Zagel |
| MICHELE A. GLENN and | Appeal from the Bankruptcy Court |
| MICHAEL R. GLENN, JR., | Case No. 11-AP-01455 (Lead Case) |
| Defendants-Appellees. | |

## MEMORANDUM OPINION AND ORDER

This matter is before me on Appellant Brian T. Sullivan's appeal from the Bankruptcy Court's Order of November 15, 2013. Mr. Sullivan sought a determination of dischargeability of debt under 11 U.S.C. § 523(a)(2)(A) against debtors Michele and Michael Glenn. The Bankruptcy Court found that the debt was indeed dischargeable as to both debtors, and Mr. Sullivan, the creditor, appealed. On appeal, I review the bankruptcy court's factual findings under the clearly erroneous standard and legal findings de novo.

## BACKGROUND

Michele and Michael Glenn owned several entities that engaged in real estate development. Around 2007, the Glenn's business, like many similar real estate businesses at the time, was experiencing financial difficulties. In the fall of that year, Mr. Glenn sought a short-term loan for the business. On numerous prior occasions, he had engaged the services of Karen Chung for assistance in procuring loans for the company. On this occasion, he approached her with interest in a $250,000 loan.

Ms. Chung contacted Mr. Sullivan to see if he would be interested in providing the loan. Mr. Sullivan ultimately agreed to loan the Glenns $250,000, to be repaid in two to three weeks at

1

an interest rate of $5,000 per week. On October 31, 2007, Mr. Sullivan met with Mr. Glenn, Ms. Chung, and Ms. Chung's employee, Adrian Lopez. Ms. Chung told Mr. Sullivan that she and Mr. Lopez had recently arranged a $1 million line of credit from LaSalle Bank for the Glenns' business. The Glenns needed the Sullivan "bridge" loan because the LaSalle Bank funds would not be available for a few weeks. Once the line of credit was available, however, Mr. Glenn would be able to pay back the Sullivan Loan.

At the October 31 meeting, Mr. Sullivan inquired as to the status of the LaSalle Loan. Mr. Lopez stepped out of the room to call the bank. Upon returning, he said that he had just spoken with a representative from the bank, who confirmed that the $1 million loan had been approved.

In addition to this assurance that the LaSalle Loan was in place, Mr. Sullivan said that, as a condition of making the loan, he wanted the Glenns and Ms. Chung to execute promissory notes obligating themselves personally to the repayment of the loan. Mr. Glenn and Ms. Chung agreed, and Mr. Glenn told Mr. Sullivan he would arrange for Mrs. Glenn to sign the note as well. On November 1, 2007, Mr. Sullivan electronically transferred $250,000 to Mr. Glenn.[1]

The loan was never repaid. In late December 2007 or early January 2008, Ms. Chung and Mr. Lopez informed Mr. Sullivan that the LaSalle loan had not been approved by the bank. Later, in the fall of 2009, Mr. Sullivan learned from LaSalle Bank that neither Ms. Chung nor Mr. Lopez had even applied for a line of credit for the Glenns' company. The representations Ms. Chung and Mr. Lopez made to Mr. Sullivan regarding the LaSalle Loan at the October 31

---

[1] As the Bankruptcy Court noted, at the time of the transfer the account had an overdrawn balance of $244,569.25. Although the entirety of the Sullivan Loan then went toward covering the overdraft, the Bankruptcy Court found that the Glenns' company had recently closed on a real estate transaction from which it was to receive $345,587.55. The Bankruptcy Court found that these closing proceeds were intended to cover the overdraft, and that the Sullivan Loan simply hit the account before the proceeds from the transaction became available. The company's November 2007 bank statement shows that the account had a positive balance of $351,008.30 the following day.

2

meeting were false. The Bankruptcy Court found that Mr. Glenn learned of these misrepresentations through Mr. Sullivan.

Mr. Sullivan filed an adversary proceeding against Ms. Chung in her bankruptcy case here in the Northern District of Illinois. (Bankr. No. 08bk15443). Pursuant to 11 U.S.C. § 523(a)(2)(A), Mr. Sullivan objected to the discharge of Ms. Chung's liability for four loans (including the loan at issue here) that he had made to her. Section 523(a)(2)(A) provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

After a three-day trial, the Chung Bankruptcy Court found that Ms. Chung had obtained the loans through her fraudulent behavior, and that the loans were thus non-dischargeable pursuant to § 523(a)(2)(A).

Mr. Sullivan also filed complaints against Michele and Michael Glenn, seeking essentially the same outcome in the context of the Glenns' bankruptcy. The Bankruptcy Court in the Glenns' bankruptcy, however, held that § 523(a)(2)(A) requires that the underlying fraud must have been committed by either the debtor at issue in the bankruptcy proceeding or his or her agent or partner in order for non-dischargeability to apply. The judge found that neither Michael Glenn nor Michele Glenn themselves committed fraud. The judge also found that Ms. Chung was neither Michael Glenn's nor Michele Glenn's agent. Accordingly, the Bankruptcy Judge held that § 523(a)(2)(A) did not apply, and that the Sullivan Loan was dischargeable as to Michele and Michael Glenn. *In re Glenn*, 502 B.R. 516 (Bankr. N.D.Ill. 2013). This appeal followed.

**ANALYSIS**

Most of the issues Mr. Sullivan raises on appeal are with respect to the Bankruptcy Judge's factual findings. While Mr. Sullivan clearly disagrees with the Bankruptcy Court's findings, however, he has not shown that any were clearly erroneous. The Bankruptcy Judge made express credibility determinations at trial with respect to whether Michael Glenn himself had committed fraud and found that he had not. Similarly, the Bankruptcy Court made express credibility determinations at trial with respect to whether Ms. Chung was the Glenns' agent and found that she was not. With respect to both claims, the Bankruptcy Court found that Mr. Sullivan had not carried his burden of proof. Here on appeal, Mr. Sullivan gives numerous reasons why he disagrees with the Bankruptcy Court's findings, but, again, none shows that the findings were clearly erroneous.

Mr. Sullivan also claims that the Bankruptcy Court, as a matter of law, misapplied § 523(a)(2)(A) in holding that the Sullivan loan was dischargeable as to the Glenns despite Ms. Chung's fraud. Mr. Sullivan asserts that, under the plain meaning of the statute, a debt obtained by false pretenses, a false representation, or actual fraud is not dischargeable as to anyone obligated on the debt. Under Mr. Sullivan's understanding of the statute, then, where a loan is entered into by two or more co-debtors, and one of the co-debtors commits a fraud to obtain the loan, that fraud is enough to render the debt non-dischargeable as to all co-debtors, not solely as to the co-debtor who actually committed the fraud.

Mr. Sullivan's interpretation of § 523(a)(2)(A) is not necessarily at odds with the language of the statute on its face. There are numerous cases in which a debt has been held non-dischargeable as to an "innocent" debtor as a result of a co-debtor's fraud. In all of these cases, however, the courts found that an agency or partnership relationship existed between the

4

innocent debtor and the co-debtor who committed the fraud, such that the fraud could be imputed to the otherwise innocent co-debtor. *See, e.g., In re Smith*, 98 B.R. 423, 426 (Bankr.C.D.Ill. 1989) (collecting cases). The Bankruptcy Court concluded that Mr. Sullivan's understanding of the statute – that a debt arising out of fraud is non-dischargeable as to any party obligated on the debt, regardless of that party's complicity in the fraud – would render the agency analyses in these decisions meaningless. There would be no need to find constructive complicity in the fraud through an agency/partnership relationship if complicity itself were irrelevant.

Mr. Sullivan responds to this reasoning by asserting that it misapprehends the work that the agency analysis is doing in these courts' application of § 523(a)(2)(A). He asserts that the agency analysis is relevant, not to establish the innocent debtor's complicity in the fraud, but rather to establish the innocent debtor's obligation on the debt. He then notes that, on the facts in the instant case, an agency relationship between the Glenns and Ms. Chung is not necessary to establish the Glenns' obligation on the Sullivan loan because the Glenns themselves (along with Ms. Chung) signed the promissory note. So under Mr. Sullivan's construction of the statute and case law, in many cases agency analysis is indeed an essential component of the analysis, but it is necessary only where the debtor's obligation on the debt is not otherwise independently established.

Mr. Sullivan's argument is creative, but I am not persuaded. Establishing a debtor's obligation on a given debt might well be a principled explanation for the relevance of agency analysis in these courts' decisions. But if true, the only limiting principle as to non-dischargeability under § 523(a)(2)(A) would be whether the debtor in question was actually obligated on the debt. So long as the debtor is obligated on the fraudulently obtained debt, the debt would be non-dischargeable as to that debtor. That is a tautology, of course, as it would be

5

nonsensical to consider whether a debt is non-dischargeable as to a debtor who was not obligated on the debt in the first instance. A debt must be potentially dischargeable in order to properly consider whether an exception to discharge applies.

Further, as the Bankruptcy Court noted, concluding that § 523(a)(2)(A) mandates that a debt obtained by fraud is non-dischargeable as to all debtors obligated on the debt, regardless of any complicity in the fraud, would be inconsistent with courts' apparent understanding of the statute's reach. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991); *In re Hudgens*, 149 Fed.Appx. 480, 483 (7th Cir. 2005). I recognize that a charitable reading of these cases may permit one to conclude that they are not necessarily inconsistent with Mr. Sullivan's statutory interpretation. Nevertheless, I am persuaded that these courts understand § 523(a)(2)(A) to require complicity in the fraud, whether actual or imputed, on the part of the debtor in question, and not simply on the part of anyone obligated on the debt.

At base, the issue is a question of competing policy concerns. On the one hand is the interest in affording "honest but unfortunate" debtors a fresh start. *See Hudgens*, 149 Fed.Appx. at 483. On the other is the interest in protecting creditors from fraud. *Id*. The interest in protecting creditors from fraud clearly trumps where the debtor at issue engaged in fraudulent conduct – that is the Chung Adversary. And I am persuaded by the relevant case law that the interest in protecting creditors also trumps where a co-debtor's fraudulent conduct is imputed to the (otherwise innocent) debtor at issue by virtue of an agency or partnership relationship. *See Casablanca Lofts LLC v. Abrham*, 436 B.R. 530, 536-37 (N.D.Ill. 2010); *Smith*, 98 B.R. at 426 (and cited cases).

I am also persuaded, however, that where there is no complicity in the fraud, actual or imputed, the interest in protecting the creditor gives way to the interest in the honest but

unfortunate debtor's fresh start. The law protects the creditor by providing for the non-dischargeability of the debt as to the debtor perpetrating the fraud, *see Grogan*, 498 U.S. at 287, and as to his or her principals and partners, *see Smith*, 98 B.R. at 426; *Casablanca Lofts*, 436 B.R. at 536-37, but, Mr. Sullivan's unfortunate case notwithstanding, no further.

Mr. Sullivan clearly does not share this view. And I am not insensitive to the argument that the creditor ought to be protected in the event of any fraud, and that one might construe the outcome here as something of a windfall for the "innocent debtor." Still, there appears to be no case that has followed Mr. Sullivan's strict application of § 523(a)(2)(A) to debtors neither found to have committed fraud, nor found to have had fraudulent behavior imputed to them. Mr. Sullivan may certainly raise these arguments on appeal, where perhaps the Seventh Circuit will conclude that Mr. Sullivan's case should be the first. Speaking for this Court, however, I am persuaded that the Bankruptcy Court arrived at the better of the two possible (and necessarily imperfect) outcomes.

Finally, Mr. Sullivan makes a strained argument asserting that the decision in the Chung Adversary collaterally estopped the Bankruptcy Court from finding that Ms. Chung was not the Glenns' agent, and from finding that Mr. Sullivan did not materially rely on a representation that the purpose of the Sullivan Loan was to fund immediate asphalt and grading work at one of the Glenn Company's sites.[2] Again, I am not persuaded.

For collateral estoppel to apply, (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). With respect to the agency question, Mr.

---

[2] See note 1 and accompanying text, *supra*.

7

Sullivan asserts that the Chung Bankruptcy Court's finding that Mr. Sullivan reasonably relied on Ms. Chung's misrepresentation implies a finding that Ms. Chung was the Glenns' agent.

First, I am not persuaded that finding the former necessarily requires finding the latter. In any event, it is undisputed that the Chung Adversary did not expressly take up the issue of agency between Ms. Chung and the Glenns, and, in my view, Mr. Sullivan's argument simply requires a leap too far. The relationship between the question of agency between Ms. Chung and the Glenns on the one hand, and the issues that were actually decided in the Chung Adversary on the other, is too tenuous to conclude that the Bankruptcy Judge in the instant case was precluded from making his own findings on the agency question.

Mr. Sullivan's collateral estoppel argument with regard to the purpose of the Sullivan Loan fares no better. The Chung Adversary did briefly mention that the Sullivan Loan was needed for urgent asphalt and paving work. But that detail is much too far afield from the issues actually before the court in the Chung Adversary to plausibly be considered "essential to the final judgment."

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.

ENTER:

James B. Zagel
United States District Judge

DATE: September 9, 2014

8